WATSON *v*. DETROIT FREE PRESS.

WITNESSES—DEPOSITIONS—ATTORNEY AND CLIENT.
>   In action for damages for injuries occasioned when plaintiff
>   was struck by defendants' automobile, rejection of deposition
>   of agent of adjustment agency as to what transpired between
>   them when plaintiff signed contract to have agency handle his
>   case was reversible error, because, in absence of showing that
>   plaintiff supposed agent to be attorney or that agent repre-
>   sented himself as such, rule excluding confidential communica-
>   tions between attorney and client is inapplicable.

Error to Wayne; Houghton (Samuel G.), J., pre-
siding. Submitted June 20, 1929. (Docket No. 148,
Calendar No. 34,498.) Decided October 7, 1929.

Case by John J. Watson against the Detroit
Free Press, a Michigan corporation, and Fred W.
Schwedt, for personal injuries. From judgment for
plaintiff, defendants bring error. From remittitur,
plaintiff brings error. Reversed, and new trial or-
dered.

*Walter M. Nelson,* for plaintiff.

*Vandeveer & Vandeveer,* for defendants.

SHARPE, J. In this action, brought by plaintiff to
recover damages for injuries occasioned by being
struck by an automobile driven by the defendant
Schwedt while in the service of the Detroit Free
Press, a corporation, the jury found in his favor,
and assessed his damages at $12,000.

The error relied on by the defendants is the re-
fusal of the court to admit in evidence the deposi-

As to whether persons other than client or attorney are rendered
incompetent by the privilege attached to communications between
client and attorney, see annotation in 53 A. L. R. 369.

tion of one Ralph V. Dillard. Dillard stated therein
that the day after plaintiff's injury he called on
plaintiff at the request of plaintiff's daughter, and
on behalf of Howard Edsell, who was in "the ad-
justing business." On cross-examination, he de-
posed as follows:

"*Q.* You told him that you were the agent of the
National Adjustment Company?
"*A.* Yes, sir.
"*Q.* Did you write, when you first went out to
see Mr. Watson, did you agree to represent him in
working up his case?
"*A.* We did.
"*Q.* Did you agree on what figure was to be
charged for it?
"*A.* Yes, we told him we would take his case and
we had a firm of attorneys there who would handle
it, and it would not cost him anything unless we got
him something.
"*Q.* Was any figure agreed on in case you re-
covered?
"*A.* Well, we were to go fifty-fifty; that was the
contract we made with him.
"*Q.* Did you have a written contract with him?
"*A.* We did."

Under the common law the mantle of secrecy is
thrown upon communications between an attorney
and his client on the ground of public policy, be-
cause they are regarded as essential to enable the
attorney to properly advise his client in the matter
under consideration. Plaintiff's right to recover
damages for his injury was here involved. Dillard
did not assume to be an attorney, or to advise the
plaintiff relative to such right. The contract en-
tered into does not appear in the record, but from
the statements of Dillard it appears that as a result
of his conference with plaintiff it was agreed that

the adjusting agency represented by Edsell "would take his case," that it "had a firm of attorneys there who would handle it, and it would not cost him anything unless we got him something." He in no way assumed to advise plaintiff as to his right to recover, but undertook that the adjustment agency would submit his claim for damages to an attorney who would be employed to act. He was asked: "What were your duties with Mr. Edsell?" and replied, "To go out and take these statements after these people were injured, get the dope on it," and added that he took plaintiff's statement and "turned that in to Edsell," and that so far as he knew Edsell "was working for himself." The plaintiff was questioned on cross-examination as to the visit of Dillard to him in the hospital, but was not asked, nor did he state, whether he supposed he was an attorney and talked to him as such.

Counsel for the plaintiff relies upon the following quotation from the opinion in *People* v. *Barker,* 60 Mich. 277, 297 (1 Am. St. Rep. 501):

"Confidential communications made in reliance upon the supposed relation of attorney and client, whether the party assuming to act as such is an attorney or not, are excluded upon the plainest principles of justice."

The record does not disclose that plaintiff "supposed" that Dillard was an attorney, or that he would handle his case. On the contrary, it quite clearly appears that, if the Edsell adjustment agency were unable to settle the case, its prosecution was to be turned over to attorneys to be selected by it.

The rule excluding such testimony is in contravention of the general rules of law, as it tends to prevent a full disclosure of the truth. It is to be construed with some strictness, and not extended be-

yond the principle of public policy on which it is founded. It has been applied to communications with a clerk or agent who acts as an intermediary between the parties. But the relation of attorney and client must exist, and the communication must have been made in furtherance of the purposes of this relation.

A leading case where this question was considered is *People* v. *Pratt,* 133 Mich. 125 (67 L. R. A. 923). The decision in that case in no way applies to the facts here presented. In an annotation thereto in 67 L. R. A. 923, the authorities are reviewed at length. A discussion of the cases wherein it is held that the privilege extends to persons in an attorney's office who represent him or assist in the transaction of his business will be found in a note in 53 A. L. R. 370. See, also, 5 Wigmore on Evidence (2d Ed.), § 2290 *et seq.;* 5 Modern Law of Evidence (Chamberlayne), § 3676*a et seq.* The applicable rule is clearly stated in 28 R. C. L. p. 574:

"The privilege of exemption from testifying to facts actually known to a witness is in contravention to the general rules of law; it is therefore to be watched with some strictness, and is not to be extended beyond the limits of that principle of policy upon which it is allowed. Except as otherwise provided by statute, it is extended to no other person than an advocate or legal adviser, and those persons whose intervention is strictly necessary to enable the client and attorney to communicate with each other, such as an interpreter, agent, or attorney's clerk."

The trial court expressed much doubt in concluding to reject this testimony. For the error in doing so, the judgment must be reversed and set aside and a new trial ordered, with costs to defendants. This

action renders it unnecessary to consider the assignment of error of which plaintiff also seeks review.

NORTH, C. J., and FEAD, WIEST, CLARK, McDONALD, and POTTER, JJ., concurred. The late Justice FELLOWS took no part in this decision.